

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

F.C. WHEAT MARITIME CORPORATION, et al.,
Plaintiffs,

v.  Civil Action No. 2:09cv93

UNITED STATES OF AMERICA,
Defendant.

## *MEMORANDUM OPINION AND ORDER*

The Court held a two-day bench trial in the above-captioned case starting on February 2, 2010. Having conducted a trial and thoroughly reviewed the evidence, argument, and records in this case, the Court finds that this case is ripe for decision. For the reasons stated below, the Court awards judgment for Plaintiffs.

### I. FACTUAL AND PROCEDURAL HISTORY

On February 27, 2008, the Captain of the United States Army Corps of Engineers vessel Mobjack fell asleep at the wheel, causing the Mobjack to crash into the Marquessa yacht when it was docked at the pier at Ocean Marine marina in Portsmouth, Virginia. The Marquessa is a 1982 58' Bertram motor yacht that was extended by its prior owners to approximately 70'. Tr. at 13-14, 288-89. F.C. Wheat Maritime Corporation purchased the Marquessa in 1998 for $895,000. Tr. at 14-15; Pl. Exh. 7C. Federal Insurance Company insured the Marquessa for $1,250,000.00 for F.C. Wheat Maritime Corporation.

Federal Insurance Company paid Wheat Maritime Corporation $682,500 in settlement of the insurance claim for the damage to the Marquessa. Federal Insurance also paid $2,380 to Ocean Marine on April 7, 2008, $11,676.76 to Ocean Marine on July 17, 2008, $1,302.50 to

Ocean Marine on September 15, 2008, $671 to Structural Composites, and $864.50 to Knox Marine Consultants. Wheat Maritime subrogated to Federal Insurance Company its rights to recover $682,500, but retained its right to recover for any damage to the Marquessa over $682,500.

On February 27, 2009, F.C. Wheat Maritime Corporation, Wheat International Communications Corporation, and Federal Insurance Company filed suit against the United States in this Court. Plaintiff Federal Insurance Company was dismissed without prejudice on February 2, 2010. A two-day bench trial was conducted on February 2, 2010 and February 3, 2010.

## II. LEGAL STANDARD

As neither party contests liability in this case, the only remaining issue is the amount of damages to be awarded.[1] In maritime law, when a vessel is damaged, "the owner is entitled to its money equivalent, and thereby to put in as good a position pecuniarily as if his property had not been destroyed." *Standard Oil Co. v. Southern Pac. Co.*, 268 U.S. 146, 155 (1924).

Where a damaged vessel is not a total loss, the owner is entitled to recover the reasonable cost of repairs necessary to restore it to its pre-damage condition. *Turecamo Mar., Inc. v. Weeks Dredge No. 516*, 872 F. Supp. 1215, 1232-33 (S.D.N.Y. 1994) (citations omitted). This may include loss of use for the time necessary to conduct repairs on the vessel. *The Umbria*, 166 U.S. 404, 422 (1897). Loss of profits is compensable, but must be proven "with reasonable certainty." *Yarmouth Sea Products Ltd. v. Scully*, 131 F.3d 389, 395-96 (4th Cir. 1997). A plaintiff is also

---

[1] Neither party disputes that admiralty law governs this case, as the suit was brought pursuant to the Public Vessels Act, 46 U.S.C. §§ 31103-31113 and the Suits in Admiralty Act, 46 U.S.C. §§ 30901-30918.

2

entitled to recover surveyors fees and all other reasonable expenses incurred by the owner related to the repair work. *Turecamo*, 872 F. Supp. at 1233; *see Midwest Marine, Inc. v. Sturgeon Bay Shipbuilding & Dry Dock Co.*, 247 F. Supp 283 (D. Wis. 1965) (finding costs to inspect the vessel for damage as proper out-of-pocket expenses for which the plaintiff was entitled to be reimbursed). Pre-judgment interest is not available under the Public Vessels Act. *Blevins v. United States*, 769 F.2d 175 (4th Cir. 1985). The plaintiff has the burden of proving the fact of damages suffered, the causation between the defendant's acts and those damages, and the amount of damages to a "reasonable certainty." *Turecamo*, 872 F. Supp. at 1233 (citing *Pinto v. M/S Fernwood*, 507 F.2d 1327 (1st Cir. 1974).

A vessel is considered a constructive total loss when the cost of repairs exceeds its pre-collision value. *Standard Oil*, 268 U.S. at 155-56. If the reclamation expense exceeds the vessel's value at the time of the collision, or if repairs are not physically and economically practicable, constructive total loss provisions apply and the limit of compensation is the vessel's fair market value at the time of collision plus interest. *Hewlett v. Barge Bertie*, 418 F.2d 654, 657 (4th Cir. 1969); *The Baltimore*, 75 U.S. 377 (1869). There is no recovery for loss of use or contemplated profits if the vessel is a constructive total loss. *The Umbria*, 166 U.S. at 421-22; *Barger v. Hanson*, 426 F.2d 640, 641 (9th Cir. 1970).

### III. DISCUSSION

The threshold inquiry in this case is whether the Marquessa is a constructive total loss. To analyze whether the vessel is a total loss or a partial loss, the Court must evaluate the cost of repairs compared to market value. Both are contested in this case.

By Plaintiff's calculations, the cost of repairs is as follows:

- $784,000 from the Ocean Marine estimate; Tr. at 42-43; Pl. Exh. 1A

3

- $12,000 to replace the sea stairs; Tr. at 44-45, 91, 93
- $27,000 to replace the Glendenning cablemaster; Tr. at 47
- $2500 to replace the safety lines; Tr. at 48-49
- $2,339 to replace the food in the refrigerator; Tr. at 49
- $10,000 to replace the five laptops and network server; Tr. at 55-56
- $12,000 to replace the Nobletec navigational software; Tr. at 58-59
- $62,000 to replace the MilSat Telesea antenna and the proprietary materials needed to recreate the Model 2; Tr. at 69, 101, 124
- $7900 to replace the proprietary HIRA; Tr. at 70-71
- $5000 to replace the proprietary gold radio; Tr. at 70
- $50,000 for a program manager or surveyor representing the owner's interests over eight months; Tr. at 73, 75
- $87,810.67 for the captain to be aboard during all shipyard work; Tr. at 74, 108
- $48,000 for the owner's travel expenses to inspect the repairs; Tr. at 76, 109 and
- $7,310 for storage costs between October 1, 2008 and March 2010. Tr. at 76-77.

This figure comes to a total of $1,117,859.67.

Plaintiff's expert Gregory Pierce, a yacht broker, found the market value of the yacht at the time of the collision to be $900,000. Tr. at 208, 229. He arrived at this figure based on a review of the yacht market through market listings of asking prices in early 2008, as well as a later review in 2009 after he was retained. Tr. at 219-20. He found the asking price for 80' Hatterases was $399,000-$895,000. Tr. at 221-22. The major comparison to the Marquessa was a boat called the Casa Blanca, a 82' Hatteras that sold for almost double the price of boats of similar size and vintage because of its custom improvements, at $875,000. Tr. at 220-21, 247.

Mr. Pierce relies in major part upon his knowledge of the Marquessa through his social visits with Mr. Wheat. Tr. at 208-09 He estimates he visited the Marquessa approximately fifty times or more. Tr. at 209. Mr. Pierce included the value of Mr. Wheat's proprietary antennas in his valuation. Tr. at 239, 245.

Plaintiff also argues that the yacht was insured for $1.25 million; that it was purchased for $895,000 and had $1.5 million in modifications made to it; and that its replacement value at the time of purchase was $2.5 million. Tr. at 22, 216; Pl. Exh. 7A-C. As a result, Plaintiff argues that the injury is a partial loss rather than a constructive total loss.

Defendant's expert surveyor, Mr. Jack Horner, and Mr. Val Lippa, the Plaintiff's expert surveyor, set the market value at $440,000 and $470,000 respectively. Tr. at 304, 160. Both experts conclude that the Marquessa is a constructive total loss, because the cost of repairs would exceed the value of the vessel. Tr. at 159. Mr. Horner testified that the repair cost for the damage caused by the collision was $460,000 to $470,000. Tr. at 315-16. Mr. Lippa, Plaintiff's expert, concluded that the estimate Ocean Marine's assessment of the repair cost at $784,000 was appropriate.

Mr. Horner's assessment is based on his inspection when he surveyed the vessel, a review of sales of comparable vessels from the subscription website soldboats.com, and an evaluation of the features that added to or detracted from the vessel's value. Tr. at 282-85, 286-88, 290-91. Mr. Horner's comparables were seven 68' and 70' Bertrams, which sold for $250,000, $478,500, $328,000, $695,000, $575,000, $338,400, and $400,000. Tr. at 325. He concluded that the modifications made to the boat that improved its value were offset by the condition of the vessel's exterior and age, with particular emphasis on the paint; he also opined that many of the modifications, despite their cost, did not improve the boat's value. Tr. at 291-92, 302, 343. Mr.

Lippa concluded the value of the vessel through his multiple extensive inspections and a review of comparables online. Tr. at 134, 159, 161-65.

The measure of damages is market value, "such as is established by contemporaneous sales of like property in the way of ordinary business, as in the case of merchandise bought and sold in the market." *Standard Oil*, 268 U.S. at 155. Only in the event that market value is not available may alternative methods of valuation be used. *Id.*; *Oliver J. Olson & Co. v. American S.S. Marine Leopard*, 356 F.3d 728 (9th Cir. 1966). However, where there is an insufficient record of sales to establish a market, "other evidence such as replacement cost, depreciation, expert opinion and the amount of insurance can also be considered to determine the value of the lost vessel." *King Fisher Marine Service, Inc. v. The NP Sunbonnet*, 724 F.2d 1181, 1185 (5th Cir. 1984).

In this case, two of the three experts agree that the vessel is a constructive total loss based on its market value. Notably, one of these experts was Plaintiff's expert surveyor. Mr. Lippa and Mr. Horner found the value of the Marquessa to be $470,000 and $440,00, respectively—in stark contrast to Mr. Pierce's figure of $900,000. Additionally, the Court is doubtful about this estimate because of Mr. Pierce's personal relationship with Mr. Wheat; indeed, Mr. Pierce has only visited the vessel because of extensive social visits with Mr. Wheat. Tr. at 208-09. Unlike Mr. Horner and Mr. Lippa, Mr. Pierce is not a surveyor but a yacht broker. He did not conduct an inspection of the boat or have the boat surveyed, and much of his information on the vessel's condition was admittedly provided by Mr. Wheat. Tr. at 208-210, 230. Significantly, Mr. Pierce's estimates were largely based upon estimates from a listing service that provided asking price rather than sale price, in contrast to the other experts. Tr. at 219-220. In addition, Mr. Pierce can only provide the sale price for one boat he considers a comparable, which notably is

almost 10' longer than the Marquessa and a different brand. Tr. at 220-21. By contrast, both Mr. Horner and Mr. Lippa looked to sales prices when conducting their market analyses. Tr. at 161-162, 286-88.

For these reasons, the Court finds the testimony of Mr. Pierce to be less credible than that of Mr. Horner and Mr. Lippa. As a result, the Court agrees with the assessment of both surveyors that the vessel is a constructive total loss, as the cost of the repairs exceeds the vessel's market value.[2] Plaintiffs' recovery is therefore limited to the market value of the Marquessa at the time of collision, as loss of use and related expenses are not available. *Hewlett*, 418 F.2d at 657; *Barger*, 426 F.2d at 641.

The Court's task then is to determine the Marquessa's value. Plaintiff criticizes the methodology of Mr. Horner and Mr. Lippa, arguing that soldboats.com is an unverified forum and that both did not properly consider the value of the improvements. However, as both Mr. Horner and Mr. Lippa testify to soldboats.com's common use in the trade, the Court finds no reason to distrust its accuracy. Plaintiff also objects that neither surveyor was aware of the improvements, but both had inspected the vessel extensively and could assess the value and condition of the vessel without knowing precisely what improvements had been made. Furthermore, Mr. Horner testified to the drawbacks of many of Plaintiff's expenditures, such as the flybridge that may increase the instability of the vessel. Tr. at 300-01. Despite Plaintiff's witnesses testifying to the vessel's "Bristol" condition, the testimony of Mr. Horner and the photographs produced establish at the very least that the paint on the vessel was not up to that

---

[2]Even under the Plaintiff's estimations, the Court could find the vessel to be a constructive total loss. Plaintiff's expert on value testified that the vessel was worth $900,000, while their estimates for repairs reach over $1.1 million dollars.

7

high standard. Tr. at 291-97; Def. Exh. 35-38, 41. Plaintiff emphasizes repeatedly the cost of the improvements, but it is well settled that value does not equal replacement cost. As an example, one may look only to Plaintiff's purchase of the Marquessa, where the purchase cost was $895,000 and the replacement value at the time of purchase was $2.5 million. Tr. at 14, 17.

The Court finds the value of the Marquessa at the time of collision to be $440,000, as assessed by Mr. Horner. Of the experts, Mr. Horner's methodology is the most sound and the most comprehensive. His assessment corresponds closely with Mr. Lippa's, but assigns a slightly lower value in part because of their respective positions on the quality of the paint at the time of the collision. Consequently, the Court adopts the testimony of Mr. Horner as to value. To exceed this compensation would allow Plaintiffs to gain more than what was lost and to be put in a better position than they had prior to the collision. *See Freeport Sulphur Co. v. S.S. Hermosa*, 526 F.2d 300, 304 (5th Cir. 1976) (explaining that the purpose of damages for maritime tort is to place the injured party as nearly as possible in the condition it would have occupied if the accident had not occurred). Because the vessel is a constructive total loss, the Plaintiffs will be made whole by receiving the fair market value of the Marquessa.

## IV. CONCLUSION

The Court finds that, as a result of Defendant's tort, Plaintiffs are entitled to $440,000, the value of the vessel at the time of collision. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to the parties.

**IT IS SO ORDERED.**

_____
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
April 16, 2010

8